ABRAM RIDDICK v. WM. A. MOORE.

A, domiciled in Virginia, dies, leaving a note on a resident of this State; his administrator, being duly qualified in Virginia, sends said note to an attorney in this State, with instructions to collect, compromise, or sell the same, as he may deem advisable: *Held*, that a transfer of said note by an Administrator passed the legal title thereto to the purchaser.

Although A.'s Administrator appointed in Virginia could not have maintained a suit in his name in this State against the payee of the note, yet for all purposes *in pais*, he was as much the owner of the note as he was of any personal property which he took into his possession in Virginia, and brought to this State and sold.

Where the defendant purchased a note on the plaintiff during the week of the trial term of the cause, he is not entitled to have his demand applied in satisfaction of the plaintiff's claim. Such a case is not embraced by the second clause of sec. 101, C. C. P., because it was not "existing at the commencement of the action;" nor by the first clause of said section, as it is not "connected with the subject of the action." Neither has the defendant any right to an equitable set-off upon the mere ground of the insolvency of the plaintiff.

To authorize an equitable set off some equitable grounds must be shown by the defendant why he should be protected against his adversary's demand. The mere existence of cross demands, or the insolvency of the plaintiff, is not sufficient.

This was a civil action tried before *Pool*, J., at Spring Term, 1871, of HERTFORD Superior Court.

The plaintiff declared upon a simple bond which defendant owed him.

The defendant answered that he had paid off and discharged said bond.

At the trial Term, the defendant, by leave of the Court, filed a supplemental answer in which he alleged that the plaintiff and another person, gave their single bond to one Robt. J. Barnes, Guardian of Miss P. J. Worrell, for $268.71, due and payable 1st day of February, 1860.

That said Barnes died intestate, domiciled in Southampton

RIDDICK v. MOORE.

County, Va., and one Worrell was duly appointed his administrator in said county by the proper Court, who entered upon the duties of his office, and is still administrator.

That since the last Term of this Court, the administrator of said Barnes had through his Attorney in this State, transferred to the defendant for value, the said bond by endorsement, and that said Attorney had full power and authority to sell and dispose of said bond.

That the plaintiff was insolvent, and that defendant's claim was for a sum greater than that of the plaintiff's against him.

That defendant was without remedy, and would lose his said debt unless he could extinquish the debt of plaintiff against the defendant, with the claim which defendant had purchased from the administrator Barnes.

The facts were that during the week, when the said supplemental answer was filed and this cause tried, the defendant bought of the administrator of Robt. J. Barnes, who was duly appointed as such in Southampton County, Va., a bond executed by one Jenkins as principal, and the plaintiff as security. This bond was in the possession of Barnes at his death in Virginia, and passed into the hands of his administrator, and was by him placed in the hands of an Attorney in this State to collect, compromise, or do the best he could with the bond. The said Attorney sold said bond to defendant for thirty cents in the dollar; and upon the trial swore that he had full authority to sell said bond.

No administration on Barnes' estate had been granted in this State. It was admitted that the plaintiff was insolvent, and that defendant's demand was for a sum greater than the amount of plaintiff's demand against defendant. The defendant asked for judgment against plaintiff for the excess.

His Honor being of opinion that the defence to said action was insufficient, gave judgment for the plaintiff, to which defendant excepted and appealed to the Supreme Court.

*W. N. H. Smith*, for plaintiff.
*D. A. Barnes & John A. Moore*, for defendant.

PEARSON, C. J.   I.  The objection that the legal title to the demand which the defendant seeks to set up, did not vest in him by the assignment, is not tenable.   Barnes was domiciled in Virginia, and had the note in his possession at the time of his death.   It passed to Worrell the administrator in that State, and he had clearly the right to receive the money upon it, or to make an assignment of it.   The place where he received the money, or assigned the note can make no difference, for the fact of his being administrator gave him the authority to do these acts anywhere.

It is true, that an action in this State upon the note could only be maintained in the name of an administrator appointed here; for the reason that the plaintiff is required to make profert of his letter of administration.   And our Courts do not for that purpose, recognize letters granted in another State; but for all purposes *in pais*, Worrell was as much the owner of the note, as of a horse taken into his possession at the place of domicil, and had the same right to send the note to this State, and sell and assign it, as he had in regard to the horse.   In deducing title, the letters of administration granted in Virginia, and the assignment, although made in this State, have the same legal effect, as the letters of administration, and a bill of sale for the horse executed in this State, had he sent a horse here and sold it as he did the note.

II.  In regard to the second objection, we concur with his Honor, in the opinion that the defendant was not entitled to have his demand applied in satisfaction of the plaintiff's demand.   It is not embraced by the 2d clause of sec. 101 C. C. P., for the reason that it was not " existing at the commencement of the action ;" this was conceded on the argument ; nor is it embraced in the 1st clause of that section, for the reason that it is not " connected with the subject of the action."

To meet this difficulty, the defendant's counsel took the position, that as all distinction between actions at law and suits in equity, is abolished by the Constitution, defendants are entitled to avail themselves of any defence to an action brought under the new system, which could have been made available by any proceeding either at law or in equity, and that under the old system, the defendant could have set up an equity to have his demand applied in satisfaction of the plaintiff's demand, upon the ground of the insolvency of the plaintiff.

We concede the first branch of the proposition. In fact, the Code of Civil Procedure is framed with an eye to that state of things ; and as it makes no provision for setting up the equity suggested by the second branch of the proposition, but on the contrary excludes it, this might be taken as a legislative declaration, that there is no such equity on the part of defendants, in regard to a demand which is not connected with the subject of the action. For illustration ; if after the commencement of the action, the defendant, *at the instance of Riddick*, bought the note, and Riddick had refused to allow it to be applied in satisfaction ; that would have been a fraud, and created an equity, connected with the subject of the action within the meaning of section 101. But as the defendant bought the note without any concert with Riddick, it is simply an unconnected demand, which is not embraced by either clause of the section referred to, or by any other section of the Code of Civil Procedure, showing that in the opinion of the lawmaker, a mere unconnected cross demand acquired after the commencement of the action, could under no circumstances create an equity to have it applied in satisfaction.

But apart from this view of the matter, and supposing that the Code of Civil Procedure is not to be taken as exclusive of what may be called common law rights, (in regard to which question we are not called upon now to express an opinion,) and supposing that the defendant is entitled before a Court having both law and equity jurisdiction, to any defence which

could have been made available under the old system, by any proceeding either at law or in equity, upon general principles and the reason of the thing, or upon the weight of the authorities, the defendant is not entitled to the equity which he claims.

It is a settled principle both of the common law and of equity, that a man who finds himself unable to pay all of his debts, has a right to make a preference and pay those creditors whom he considers the most meritorious, provided the preference be honestly made. The equity here insisted on, defeats this right, and puts it in the power of any debtor after he is sued, if the plaintiff be insolvent, to go into the market and buy up claims on him and defeat the action, the effect of which will be, that no man who is insolvent can maintain an action, and any debtor whom he sues, may take this right of preference away from him, and exercise it as a matter of speculation, by buying in claims at a discount, and getting credit for the full amount ; nay ! if the notion be carried out, he may demand judgment for the excess, as is done in our case. How is this supposed equity worked out ? The man he buys of, has no equity, and he himself has none ; so the equity, if there be one, must originate from the fact, that in order to avoid the payment of an honest debt, he buys a debt upon a man whom he knows to be insolvent, and then puts the *gravamen* of his case upon that very insolvency.

True, a debtor may buy up claims before he is sued, and have them applied in satisfaction of the debt. But one who seeks to have this benefit of a claim unconnected with the subject of the action, must see to it, that he is not "behind time," and cannot stand alone upon the insolvency of the plaintiff.

Upon the weight of authority, without reference to all of the cases which are cited and commented . upon in the text books, we deem it .enough to say, the preponderance is decidedly against the idea that insolvency can constitute a ground of equity. In all of the cases in which the allegation is made,

with one or two exceptions, there is some distinct equity, and the insolvency of the other party is relied on, only as a make-weight, and by way of troubling the Court.

Story, in his Equity Jurisprudence, sec. 1436, says, in treating of sets-off allowed in equity, " whenever there is a mutual credit, between the parties touching the debts, (that is, when the debts are in any way connected) a set-off is, upon that ground alone, maintainable in equity; although the mere existence of mutual debts, without such a mutual credit, might not even in a case of insolvency, sustain it." That judicious author, Adams, in his Treatise on Equity, 223, referring to the subject, says, there must be some equitable element such as trust or fraud, and does not even refer to "insolvency" as an element of equity. In *Ransom* v. *Samuel*, 1 Craige and Phillips, 161, 177, which seems to be the controlling case, after the plaintiff's counsel had taken ground that the circumstance of the defendant's being out of the jurisdiction, and of his insolvency, furnish additional reasons why the Court should afford relief, for if the defendant be allowed to recover, the Court will have lost the power of doing justice between the parties; the Lord Chancellor intimated to the defendant's counsel, that it was unnecessary for him to address himself to the circumstance of the defendant's being out of the jurisdiction, and insolvent, inasmuch as those circumstances could give the plaintiff no equity. The argument is then continued upon other matters, and the Chancellor concludes by saying, " we speak familiarly of equitable set-off, as distinguished from set-off at law: but it will be found, that the equitable set-off exists in cases where the party seeking the benefit of it, can show some equitable ground, for being protected against his adversary's demand. The mere existence of cross demands, is not sufficient." He had before put insolvency out of the question; so that disposes of our case; for the defendant has nothing to stand on except the existence of cross demands, and the insolvency of the plaintiff.

---

Under the Code of Civil Procedure, and upon the reason of the thing, and the weight of authority, we concur with his Honor.

Their is no error.

PER CURIAM.                                    Judgment affirmed.