* THE RALEIGH NATIONAL BANK v. VAN B. MOORE et als.

## Mortgage—Priority.

1. Three mortgages were executed on the same property, and the money obtained from the third, was used to discharge the first *pro tanto*. When the third mortgage was executed, the first mortgagee covenanted with the third mortgagee, that the third mortgage should have preference over the unpaid bal-

---

* MERRIMON, J., having been of counsel, did not sit on the hearing of this case.

ance on the first; *It was held*, that such covenant did not have the effect of subrogating the third mortgagee to the rights and priorities of the first, except as to the amount still due to the first mortgagee.

2. On a sale of the land, in such case, the proceeds must be applied—1st. To the payment of the amount remaining due on the first mortgage, the third mortgagee being subrogated to his rights; 2nd. To the payment of the second mortgage; and 3rd. To the payment of the balance due on the third mortgage.

CIVIL ACTION, tried before *Clark, Judge,* at August Civil Term, 1885, of WAKE Superior Court.

A jury trial was waived, and it was agreed between the parties that his Honor should find the facts; and upon the evidence offered and the admission of the parties, his Honor found the following facts, viz:

"1. That the plaintiff is, and at the dates hereinafter mentioned was, a corporation duly created and existing according to law.

"2. That the defendant, Manteo Lodge, No. 8, Independent Order of Odd Fellows, is, and at the dates hereinafter mentioned was, a corporation duly created and existing according to law.

"3. That on June 5th, 1877, J. N. Bunting and wife, by their deed, duly executed, conveyed to the defendant Frances J. Ballard, the lot of land described in the pleadings, in fee.

"4. That on October 1st, 1877, the defendants V. Ballard and wife, Frances J., executed to the defendant John E. Bledsoe, trustee, a certain deed of trust, whereby they conveyed to the said trustee, the said lot of land, for the purpose of securing six several notes, executed by said V. Ballard and wife, to M. A. Bledsoe, each for the sum of $204.23, dated October 1st, 1877, and payable respectively, on the 1st days of October, 1878, 1879, 1880, 1881, 1882 and 1883, and bearing interest from date at eight *per cent. per annum;* that said deed of trust was duly registered, on October 5th, 1877.

"5. That under said deed of trust, the said trustee is required to sell said land, upon default in the payment of said notes, or

any of them, upon the request of M. A. Bledsoe or any assignee of said notes.

6. That on February 14th, 1878, the said V. Ballard and wife, executed to Wm. Simpson, their mortgage deed, which was duly registered on February 26th, 1878, whereby they conveyed to said Simpson the said lot of land, for the purpose of securing three several notes, executed by the said V. Ballard and wife to said Wm. Simpson, each for the sum of $100, dated February 14th, 1878, and payable respectively, at one, two and three years after date, and bearing interest from date at eight *per cent. per annum.*

"7. That the consideration of said notes was as follows, viz.: The said V. Ballard and wife, were indebted to the Mechanics' Building and Loan Association, in the sum of three hundred dollars; the said Wm. Simpson, at their request, discharged the indebtedness, by surrendering certain stock in said Association, owned by him, and thereupon the notes and mortgages were executed; that thereafter the said Wm. Simpson assigned the said mortgage and notes to John C. Blake, in payment of a debt theretofore owing by him to said Blake; that thereafter said John C. Blake, for value, assigned said mortgages and notes to the plaintiff, in satisfaction of an indebtedness theretofore existing.

"8. That prior to October 11th, 1879, said M. A. Bledsoe, for value, transferred and endorsed to J. J. Litchford, the note secured by said deed of trust to John E. Bledsoe, which fell due on October 1st, 1880; that on January 6th, 1880, said J. J. Litchford, for value, transferred and endorsed said note to the defendant Manteo Lodge.

"9. That on October 20th, 1879, the said V. Ballard and wife, executed to the defendant Van B. Moore, agent, their mortgage deed, which was duly registered October 22nd, 1879, whereby they conveyed to said Moore, the said lot of land, for the purpose of securing their note executed to said Van B. Moore, agent, for the sum of $800, dated October 20th, 1879, and pay-

able October 20th, 1880, and bearing interest from date at 8 *per cent. per annum*, payable semi-annually; that said eight hundred dollars was borrowed by said V. Ballard and wife (W. H. Bledsoe negotiating the loan at the instance of M. A. Bledsoe), for the purpose of paying off and discharging certain of the notes secured by the deed of trust to John E. Bledsoe, as aforesaid, and with said sum the said V. Ballard and wife, paid off and discharged the three notes secured by said deed of trust, which fell due on the 1st day of October, 1878, 1879, and 1881, and also made a payment on the note secured by said deed of trust, which fell due on October 1st, 1882, of $100.86, which was duly credited on the same; that upon payment of said three notes falling due on October 1st, 1878, 1879, and 1881, as aforesaid, the same were taken up by said Ballard and wife and destroyed. Said Van B. Moore had no notice of the mortgage executed to Simpson, as aforesaid, other than that fixed upon him by its registration.

"10. That on October 20th, 1879, the said John E. Bledsoe and M. A. Bledsoe, executed to the said Van B. Moore, the instrument of writing hereinafter set out. That said V. Ballard and wife had no knowledge of its execution.

"11. That the note falling due October 1st, 1883, and the note falling due October 1st, 1882, with the credit of $100.86 as aforesaid, are both in possession of said M. A. Bledsoe.

"12. That by agreement of the parties, Van B. Moore was to collect the rent for said lot of land, and hold the same, subject to the order and judgment of this Court. That he has now in his hands, after deducting taxes and other expenses paid by him, the sum of $188.02, being rent up the......day of........., 1885.

"13. That there is due and payable on the note held by Manteo Lodge, the sum of $275.65, with interest on $204.23, from August 31st, 1885, at eight *per cent.* interest, payable annually; on the notes held by M. A. Bledsoe, the sum of $479.64, with interest on $307.60 from August 31st, 1885, at eight *per cent.*;

47

on the mortgage notes held by the plaintiff, the sum of $481.13, with interest on $300 from August 31st, 1885, at eight *per cent.*; on the mortgage note held by said Van B. Moore, agent, the sum of $1,000.73, with interest on $800 from August 31st, 1885, at eight *per cent.*, interest, payable semi-annually on 1st of April and October in each year, with interest at the same rate on instalments of interest."

The following is a copy of the agreement from Moses A. Bledsoe to Van B. Moore, above referred to:

"Whereas, V. Ballard and F. J. Ballard, his wife, did, on ...... day of ....., 1877, execute to John E. Bledsoe, their deed, whereby they conveyed to him in fee-simple, a tract of land in the city of Raleigh, adjoining the lands of H. Mahler, N. S. Harp and others, and more particularly described in their said deed, which is duly recorded in the office of the Register of Deeds for the said county of Wake, in Book 48, at page 329, in trust, however, to secure to Moses A. Bledsoe, the payment of twelve hundred dollars; and whereas, at the instance of the said Moses A. Bledsoe and John E. Bledsoe, Van B. Moore, as agent of Mrs. Lucy W. Moore, has this day lent to the said V. Ballard and wife, the sum of eight hundred dollars, to be paid to the Moses A. on account of his said debt; and the said V. Ballard and wife, have executed to the said Van B. Moore, their deed of mortgage, whereby they have conveyed to him the land aforesaid, to secure the payment of the sum lent by him as aforesaid:

"Now, therefore, in consideration of the premises, and of one dollar to them paid, the said Moses A. Bledsoe and John E. Bledsoe, do hereby agree with the said Van B. Moore, that the mortgage executed to him as aforesaid, shall, with respect to the deed of trust executed to the said John E. as aforesaid, be a first mortgage, and have priority of payment out of the proceeds of sale of said land, whenever sold, over and before the debt secured in said deed of trust and any part thereof; and further, that they, and neither of them, will not undertake to collect the

·debt secured in said deed of trust by a sale of said land, until the sum secured in the said mortage, and every part thereof shall be paid.

In testimony whereof, the said Moses A. Bledsoe and John E. Bledsoe have hereunto fixed their hands and seals this 20th day of October, 1879.

(Signed)     JOHN E. BLEDSOE. [Seal.]

(Signed)     M. A. BLEDSOE.    [Seal.]"

Upon the foregoing finding of fact, the Court rendered the following judgment:

"1. That the plaintiff, the Raleigh National Bank, recover of the defendants V. Ballard and Frances J. Ballard, the sum of four hundred and eighty-one dollars and thirteen cents, with interest on $300 thereof, at eight *per cent.* from August 31st, 1885, until paid.

"2. That the defendant Manteo Lodge, No. 8, I. O. O. F., recover of the defendants V. Ballard and Frances J. Ballard and M. A. Bledsoe, the sum of two hundred and seventy-five dollars and sixty-five cents, with interest on $204.23 thereof, at eight *per cent.* from August 31st, 1885, until paid, interest payable annually.

"3. That the defendant M. A. Bledsoe recover of the defendants V. Ballard and Frances J. Ballard, the sum of four hundred and seventy-nine dollars and sixty-four cents, with interest on $307.60 thereof, at eight *per cent.* from August, 1885, until paid, payable annually.

"4. That the defendant Van B. Moore, agent, recover of the defendants V. Ballard and Frances J. Ballard, the sum of one thousand dollars and seventy-three cents, with interest on $800 thereof, at eight *per cent.* from August 31st, 1885, until paid, interest payable semi-annually on 1st of April and October in each year.

"5. That the mortgage note executed by the defendants V. Ballard and Frances J. Ballard to the defendant Van B. Moore, agent, be subrogated to the prior lien of the notes held by said

M. A. Bledsoe, as aforesaid, upon the lot of land described in the pleadings, to the extent of the amount due upon the said notes, being four hundred and seventy-nine dollars and sixty-four cents, with interest on $307.60 thereof, at eight *per cent.* from August 31st, 1885, until paid, as aforesaid, interest payable annually.

"6. That the amount in the hands of Van B. Moore, being one hundred and eighty-eight dollars and two cents, as aforesaid, be applied as a credit *pro rata* upon the notes held by Manteo Lodge and M. A. Bledsoe, as aforesaid, to-wit: sixty-eight dollars and sixty-two cents upon the note held by Manteo Lodge, and one hundred and nineteen dollars and forty cents, upon the notes of M. A. Bledsoe, the latter sum to be paid upon the mortgage note held by Van B. Moore, agent, by virtue of its subrogated rights and priority, as aforesaid.

"That the said lot of land described in the pleadings, be sold as hereinafter provided, and the proceeds of sale, after payment of the expenses of sale, be applied as follows, viz.: First, to the payment and satisfaction of the amounts remaining due, (after the aforesaid credits), upon the note held by the defendant Manteo Lodge, aforesaid, and upon the notes held by said M. A. Bledsoe, as aforesaid, the latter sum to be paid upon the mortgage note held by Van B. Moore, agent, by virtue of its subrogated rights and priority, as aforesaid; second, to the payment and satisfaction of the amount due upon the note held by the plaintiff, as aforesaid; third, to the payment of the balance remaining due upon the note held by Van B. Moore, agent, after the credits aforesaid; fourth, to the payment of the notes held by M. A. Bledsoe, as aforesaid.

"8. That said sale be made by Charles M. Busbee and Van B. Moore, Esqrs., who are hereby appointed commissioners for that purpose, at the court house door in the city of Raleigh, for cash, after thirty days advertisement of the time, place, and terms of sale, in the *Evening Visitor*, a newspaper published in said city, and that they report said sale, when and how made, to the next term of this Court.

"9. That at said sale, any party to this action is authorized to become a purchaser.

"10. That the plaintiff, the Raleigh National Bank, recover of the defendants, its costs and disbursements incurred, up to and including the present term of this Court.

"11. That the defendants, and all persons claiming under them, or any or all of them, be forever barred and foreclosed of all right, title, interest and equity of redemption in the said lot of land and premises or any part thereof;"

From this judgment, the defendant Moore appealed.

*Mr. C. M. Busbee,* for plaintiff.
*Mr. John Gatling,* for defendant.

ASHE, J., (after stating the facts). The questions presented by the record, are in regard to the priorities of the mortgages, executed at different times, and to different parties, by V. Ballard and wife Frances. The facts found by his Honor, among others, were, that the first mortgage was to John E. Bledsoe, trustee, to secure six several notes, for the sum of $204.23 each, dated October 1st, 1877, and payable respectively on the 1st of October, 1878, 1879, 1880, 1881, 1882 and 1883, with interest at 8 *per cent.*

Prior to October 1st, 1879, M. A. Bledsoe, for value, endorsed to J. J. Litchford the note secured by the deed of trust to John E. Bledsoe, which fell due on October 1st, 1880, and the same was endorsed for value by said Litchford, on the 6th of January, 1880, to the defendant Manteo Lodge.

The second mortgage was executed to William Simpson, dated February 18th, 1879, to secure three several notes, bearing even date with the mortgage, payable respectively in one, two and three years. These notes and the mortgage, for a valuable consideration, were assigned by Simpson to Jno. C. Blake, and by him, for like consideration, to the plaintiff.

The third mortgage was executed to Van B., Moore, dated October 20th, 1879, to secure a note of even date, for the sum of $800, given to him by the said Ballard and wife, bearing interest from date at 8 *per cent. per annum*, payable semi-annually.

This money was borrowed by V. Ballard and wife, at the instance of M. A. Bledsoe, for the express purpose of paying off and discharging certain notes secured ·by the deed of trust to John E. Bledsoe, and, accordingly, was applied to the discharge of the notes severally due on the 1st of October, 1878, 1879, and 1881, and also in part·payment, to-wit: $100.86, on the note falling due on the 1st of October, 1882, which was duly credited thereon, and, contemporaneously with the execution of the last mortgage, the.agreement, of which V. Ballard and wife had no knowledge, was entered into between John E. and M. A. Bledsoe, on the one part, and Van B. Moore on the other, that the mortgage executed to Moore, should have priority over the deed of trust, and the debt secured therein should have preference to the debts secured in the trust, and the further stipulation, that they would not undertake to collect the debts secured in said deed of trust, by a sale of said land, until the sum secured in the mortgage should be paid.

All of the notes, secured in the trust, were paid off with the money loaned to them by Moore, except that transferred to the Manteo Lodge, and that falling due October 1st, 1883, and that falling due October 1st, 1882, with the credit of $100.86, which still remained in the hands of M. A. Bledsoe.

The defendant contended, that as Bledsoe proposed to Moore to loan Ballard and wife the money, wherewith to pay off and discharge the notes secured in the trust, and it was used by them for that purpose, that he should be subrogated to all the equity of Bledsoe, and thereby acquire a lien prior to that of the Simpson mortgage, and there was error in the judgment of the Court, because it was not rendered upon that principle.

But, in our opinion, the main question in the case, does not arise so much out of the conflicting equities involved in the case, as upon the construction and effect of the agreement entered into between the two Bledsoes and Moore. The transaction seems to have been nothing more or less, that that M. A. Bledsoe, who had a large debt secured in the deed of trust, wanted his money, and he proposed to Moore, to loan to Ballard and wife the money to pay off and discharge the notes, or a part thereof, which he held against them, and as an inducement to Moore to make the loan, he agreed that the mortgage taken by Moore from Ballard and wife, to secure the $800 loaned them, should "be a first mortgage, and have priority of payment out of the proceeds of the sale of said land, whenever sold, over and before the debt secured in said deed of trust, and any part thereof, and further, that they, and neither of them, will undertake to collect the debt secured in said deed of trust, by a sale of said land, until the sum secured in the said mortgage, and every part thereof, shall be paid."

The money was not loaned to Bledsoe, but to Ballard and wife, and a mortgage taken from them to secure its payment. Moore looked to them alone for payment, and after receiving the money, they had a right to apply it or not, as they might see proper, to to the discharge of Bledsoe's notes. But they did so apply it, and it extinguished the debts secured by the deed of trust *pro tanto*, and put that much of those debts out of the way of Moore's mortgage, and left only the debt due the Manteo Lodge, to the payment of which there is no objection, and the two notes left in the hands of Bledsoe.

The entire scope and meaning of the "agreement" was, that the notes secured in the trust, should not be in the way of, or oppose any obstacle to, the payment of the Moore debt, and when the three notes were discharged, they were put out of the the way, leaving only the two notes in the hands of Bledsoe, the one due October 1st, 1883, and the other due October 1st, 1882, with the credit indorsed; and as to these notes, his Honor held

that the mortgage note held by Moore, should be subrogated—and this we think was the only equity acquired by Moore, by the agreement with Bledsoe, and was fully satisfied and met by the judgment of the Court in that respect.

When Moore secured his mortgage, that in favor of Simpson and transferred. to the plaintiff, was registered. Its registration was notice to him. Then when he received his mortgage, he took it subject to that mortgage. But while he was willing to, take a mortgage, subject to a prior mortgage of only three hundred dollars, he was unwilling to take it, subject also to the lien of the deed. of trust for $1,225.38, and therefore it was, that he required the covenant from Bledsoe, that his mortgage should have preference to the deed of trust, so that instead of there being $1,525.38 ahead of his mortgage, there should be only the $300 secured by the mortgage to Simpson.

If Ballard and wife had. paid the whole debt due to M. A. Bledsoe, it would have extinguished the lien of the deed of trust, the effect of which would have been to let the Simpson mortgage into the position of priority, 1 Jones on Mortgages, §605 ; and the same principle must apply, when the first lien is satisfied *in part,* so as to let into priority the subsequent incumbrance *pro tanto.*

The view we have taken of the case, sustains the judgment of the Court below, and is supported by authority. The case of *Taylor v. Wing,* 84 New York, is a case almost directly in point. In that case, there were four mortgages, and, as in this case, the beneficiary in the first mortgage, executed an instrument under seal, referring to the first mortgage as annexed, in which he covenanted and agreed that the fourth mortgage should have priority of lien, before and above the first mortgage, as fully and to the same effect, as if it had been previously executed. The action was brought by the plaintiff, who was the holder, to foreclose the two intermediate mortgages, and the Court says : "In an action to foreclose two mortgages, it appeared there was a prior mortgage upon the premises, the beneficiaries whereof, in

pursuance of an agreement, under which a fourth mortgage was executed and accepted, covenanted that said mortgage should have priority of lien over his first mortgage, as if it had been previously executed and recorded. The lien of the first mortgage was subsequently discharged. *Held,* that the covenant did not give the fourth mortgage a priority of lien over plaintiff's two mortgages ; that the intent of the parties to the agreement under which the fourth mortgage was taken, was not to place that mortgage ahead of plaintiff's mortgages, or to give to its owner an interest in the first mortgage, but simply that the liens prior to the fourth mortgage should only *be the amount of the plaintiff's mortgages,* and that the agreement was fully satisfied by a discharge of the first mortgage."

The only difference between that case and this is, that there the first mortgage was entirely discharged ; here only in part, but by substituting the lien of Moore, to that of M. A. Bledsoe, to the extent of the two notes held by him, the agreement was as fully satisfied, as if all the debts secured in the deed of trust had been paid off and discharged by Ballard and wife. The judgment of the Court below was to that effect, and we think it was correctly decided.

Upon a careful examination of his Honor's conclusions of law, upon the facts found by him, we find no error. His judgment is affirmed in every particular, and the case is remanded to the Superior Court of Wake county, that it may be proceeded with in conformity to this opinion.

No error. Affirmed.