## DAVISON v. GREGORY.

(Filed April 21, 1903.)

1. PLEADINGS—*Demurrer.*

    A demurrer will lie only for defects which appear on the face of the pleading to which it is opposed.

2. SUBROGATION—*Mortgages—Assignments for the Benefit of Creditors— Payments.*

    Where creditors furnish money to take up a mortgage on the land of the debtor and has the same assigned to the assignees in a deed of assignment for the benefit of creditors, the creditors are entitled to be subrogated to all the rights of the mortgagee, and it is not a payment of the mortgage.

3. PARTIES—*Assignments for the Benefit of Creditors—Trustees—Trust Deeds.*

    Where trustees, for the purpose of settling their trust, bring suit and make all interested persons parties, a court of equity will entertain the action.

ACTION by G. W. Davison and C. E. Baker, trustees, against N. A. Gregory, Mrs. Pattie McCrary, and others, heard by Judge *Thomas A. McNeill* and a jury, at April Term, 1902, of the Superior Court of GRANVILLE County. From the judgment, Mrs. Pattie McCrary appealed.

*T. T. Hicks* and *A. A. Hicks,* for the plaintiff.

*John W. Graham* and *A. W. Graham,* for the defendant, Mrs. Pattie McCrary.

CONNOR, J.  This was an action brought by the plaintiffs, Geo. F. Davison and Chas. E. Baker, trustees, against N.

A. Gregory, Laura N. Gregory, his wife and Pattie M. McCrary.

The plaintiffs allege that on the 30th day of January, 1885, Nathaniel A. Gregory borrowed of John Y. Gholson one thousand dollars for which he gave his bond to be due January 30th, 1886, with interest at eight per cent. and to secure its payment, he and his wife, Laura N. Gregory executed a deed of trust to Robert T. Winston of the same date, conveying the tract of land containing one hundred acres, situate in Granville County, and fully described therein. Said deed was duly recorded.

On December 7, 1886, said Gregory and wife executed to Mrs. Pattie McCrary his bond for the sum of $1,500.00 and executed to John A. Williams, trustee, a deed in trust to secure said note conveying the equity of redemption of said Gregory in the said one hundred acres of land and also another tract of two hundred and sixty and one-half acres, which deeds were duly recorded.

On September 15th, 1887, W. A. Davis and N. A. Gregory, being partners, became embarrassed and they and their wives conveyed certain of their property, including any remaining interest of N. A. Gregory in that above referred to, to plaintiffs, G. W. Davis and Chas. E. Baker, trustees, to secure the payment of certain debts therein set out, payable to twenty different persons. Said conveyance was duly recorded.

Thereafter the assignee of the said Gholson demanded payment of the note executed to him as aforesaid, and threatened to collect the same by foreclosure of the first trust deed and the sale of the one hundred acres therein conveyed. That said Davis & Gregory stated to the plaintiffs Davison and Baker that a sale of the said one hundred acres at that time would greatly prejudice their creditors; the land would not bring a fair price, and that it was worth far more than

the amount of the said incumbrances. That thereupon the plaintiffs solicited the creditors of, said Davis & Gregory, secured in the deed of trust to them, to raise the money to take up and purchase said Gholson note, and these plaintiffs did take up said Gholson note on March 17, 1890, as trustees for themselves and said other last named creditors, who furnished the money for said purpose. That ten of said creditors agreed to furnish the money for the purpose stated and they signed an agreement in the following words:

"We the undersigned creditors of Davis & Gregory, of Oxford, N. C., hereby agree to pay Geo. W. Davison and Chas. E. Baker 10 per cent. of our claims due us by said firm of Davis & Gregory, and which claims are secured by deed in trust dated September 15, 1887, for the purpose of protecting 100 acres of land, which is about to be sold under mortgage, and the said G. W. Davison and Charles E. Baker, are authorized to purchase said mortgage note or do whatever is considered best in their judgment for all parties concerned."

And they at once paid into the hands of plaintiff, C. E. Baker, the said sum and the same was at once applied by these plaintiffs to the purchase of said note and its security.

That said note was at that time held by the bank of Oxford by assignment from Gholson. That the president of said bank inadvertently endorsed said note to G. W. Davison and C. E. Baker, trustees of Davis & Gregory, whereas he should have endorsed same to the plaintiffs as trustees or agents of the parties who furnished the money to buy the same. Plaintiffs promptly informed said president Herndon of the error in the assignment of said note and its security and requested a correction of the endorsement and said Herndon at once authorized its correction. The plaintiffs allege that they still have the same and offer to produce them in court when necessary in the progress of this cause.

Shortly after the purchase of the said Gholson note during the year 1891, plaintiffs took possession of said tract of 100 acres of land and held the same continuously thereafter until about the year 1900 when the defendant, Pattie McCrary, by her agents unlawfully and wrongfully entered and took possession of the same to the exclusion of plaintiffs and their agents.

That the said Gholson note had divers small credits on it at the time it was taken up by the plaintiffs, aggregating $461.67, and the plaintiffs received from the rents of said land amounts aggregating $618.56, leaving a balance due on said note, February 13, 1902, of $1,150.00. That said John A. Williams, trustee, on September 18, 1895, sold under the trust deed executed to him the tract of 266½ acres for the sum of $1,740.00, which nearly if not quite extinguished the debt due to the defendant, Mrs. McCrary. That thereafter the said John A. Williams, attempted to advertise and sell the 100 acres under his said second deed of trust sometime during the year 1897, and that it was bid off by some one for the defendant, Mrs. McCrary. That they had no knowledge or notice of said sale or the amount bid. That no deed was ever made by said Williams to Mrs. McCrary for said land. That there is no such person known to the plaintiffs as Robert T. Winston. There was at the time of this execution residing in Oxford the Hon. Robert W. Winston, who now resides in the county of Durham. That the said Gholson is dead. That the said 100 acres is not now worth the amount due on the Gholson note. That the said N. H. Gregory is insolvent and has left the State, and that W. A. Davis is dead. That John A. Williams, trustee is dead, leaving a large number of heirs at law. They demand judgment that the said 100 acres be sold by a commissioner to be appointed by the court, the proceeds to be applied to the payment of the Gholson note for the benefit of the parties fur-

nishing the money for the purchase thereof, and that Mrs. McCrary account for rents and profits on said land, and for other relief.

Thereafter in accordance with the order of the court made herein, Walton & Whann Company, and others, being the creditors of Gregory & Davis, secured in the trust deed to the plaintiffs, who furnished the money with which to take up the Gholson note, came in and made themselves plaintiffs and jointly and severally adopted and made their own the complaint, and united in asking the relief as therein prayed.

The defendant Pattie McCrary, demurred to the complaint for defect of parties. Said demurrer in that respect was sustained. The necessary parties were thereafter made pursuant to the order of the court.

The third and fourth causes of demurrer were as follows:

"3. That it will appear from an inspection of the note which plaintiffs offer to produce in court, that the said note was assigned to Davison & Baker, trustees for Davis & Gregory, and defendant McCrary insists that said assignment was an extinguishment of said note, and the plaintiffs have no cause of action thereon, as by said assignment the note of January 30, 1885, was paid and the mortgage then executed satisfied, and should be cancelled, and the mortgage executed Dec. 7, 1886, to John A. Williams, for the benefit of Mrs. Pattie McCrary, became the first lien on said land.

4. That if said mortgage of January 30, 1885, is still operative then the title to the tract of land is still in Robert W. Winston, and until a sale under said mortgage is had by the said Robert W. Winston, trustee, and a purchase made thereunder, no action can be maintained, certainly not by the plaintiffs, who have only an equity of redemption in said land subject to the two mortgages recited in the complaint."

His Honor overruled the third and fourth causes of de-

murrer, and rendered judgment, upon which the defendant
Pattie McCrary excepted and appealed.

In this court the defendant Pattie McCrary asked for a
writ of *certiorari* directing the plaintiffs to produce and file
the copy of the note executed by Gregory to Gholson with the
entries and endorsements thereon. Upon the return of the
writ, counsel for plaintiffs stating that he had said note in
his possession, pursuant to a suggestion from the court, filed
copies thereof. The following endorsements appear thereon:
"Without recourse I assign this note and mortgage attached,
to Geo. W. Davison and Chas. E. Baker, trustees for Davis
& Gregory, March 17th, 1890," signed H. C. Herndon, Pres-
ident Bank of Oxford, Oxford, N. C."

We treat this record as if the notes had been in fact at-
tached to and made a part of the complaint.

The plaintiff's counsel contend that the demurrer is de-
fective in that it is based upon the assumption of a fact which
does not appear upon the face of the complaint. The de-
murrer states: "That it will appear from an inspection of the
note, which plaintiffs offer to produce in court, that the said
note was assigned to Davison & Baker, trustees for Davis &
Gregory," etc. We think the objection well taken. "It is
a fundamental rule of pleading that a demurrer will lie only
for defects which appear on the face of the pleading to which
it is opposed and it must be decided without evidence *aliunde,*
unless by consent of the parties." Enc. Pl. & Pr., Vol. 6, p.
297.

Pearson, C. J., in *VonGlahn v. DeRossett,* 76 N. C., 292,
referring to a demurrer of this character, says: "It is a
'speaking demurrer' as styled by the books. That is, in order
to sustain itself the aid of a fact not appearing upon the com-
plaint is invoked."

The learned counsel for the defendant, Mrs. McCrary, fully
appreciating this objection to the pleading, filed a petition

in this court for a writ of *certiorari* directing the plaintiffs to file a copy of the note with endorsements thereon. Upon return of the writ, plaintiff's counsel reserving all of his clients' rights and not conceding that the defendant was entitled to the writ for the purpose indicated, frankly stated to the court that he had the note in his possession and had no objection to filing a copy of it. This having been done, we proceed to dispose of the appeal as upon demurrer to the complaint, treating the note with endorsements thereon as exhibits attached to and forming a part of the complaint. The demurrer in this view of the pleadings, admits that ten of the creditors secured in the deed in trust to the plaintiffs, conveying the property conveyed to Winston, trustee, in the first trust deed, pursuant to the agreement set out in the complaint and for the purpose of preventing the sale of the 100 acres of land covered by the Winston trust deed, at a time and under circumstances threatening a sacrifice of the property, advanced the amount of the note and placed it in the hands of the plaintiff, Baker, with direction to the plaintiffs to take up and have transferred to them, as trustees for said creditors, the note and security therefor.

It is well settled that if the debtor of several creditors having security, pays off with his own money the first encumbrance the debt secured thereby is extinguished, and such payment and extinguishment will enure to the benefit of the encumbrance next in order of priority. *Bank v. Moore,* 94 N. C., 734. It is equally clear that in a court of law if the surety pays off the debt for which he is bound and upon which a judgment has been obtained against his principal and himself, he must, if he would preserve the judgment with the liens and other rights thereby acquired against the principal, procure its assignment to a third person. *Hodges v. Armstrong,* 14 N. C., 253; *Liles v. Rogers,* 113 N. C., 200; 37 Am. St. Rep., 627; *Peebles v. Gay,* 115 N. C., 41; 44 Am.

St. Rep. 429; *Johnson v. Gooch,* 116 N. C., 64.    Ruffin, J.,
in *Sherwood v. Collier,* 14 N. C., 380; 24 Am. Dec., 264,
says: "It is true that if a payment be not intended, but a
purchase, there is a difference.    But that can only be by a
stranger or by using the name of a stranger to whom an as-
signment can be made, when there is but a single security and
that one upon which all of the defendants are liable.    This
is upon the score of intention and because the plea of pay-
ment by a stranger is bad upon demurrer.    If the assignment
be taken by the surety himself, that is an extinguishment,
notwithstanding the intention, because the assignment to one
of his own debt is an absurdity."

In equity, however, when the surety, or, upon the same
principle, a subsequent encumbrancer or any other person
having an interest in the property affected by the liens, pays
off the debt of his principal, or of the common debtor, as the
case may be, for the protection of the property liable for the
debt, he is subrogated to the rights of the creditor whose debt
he has paid and to all securities held by him, without a formal
assignment.    *York v. Landis,* 65 N. C., 535; *Holden v.
Strickland,* 116 N. C., 185; *Carter v. Jones,* 40 N. C., 196;
49 Am. Dec., 425.

"A second mortgagee who is in danger of losing his secur-
ity by the foreclosure of the first mortgage may redeem from
the first mortgagee or pay the debt secured by the first mort-
gage, and may thereupon look to the mortgaged property for
his reimbursement even against intervening encumbrancers."
Sheldon on Sub., 20.

Mr. Justice Parker, in *Robinson v. Levitt,* 7 N. H., 99,
thus states the doctrine: "There are cases in which a party
who has paid money due upon a mortgage is entitled for
the purpose of affecting the substantial justice of the case
to be substituted in the place of the incumbrancer and treat-
ed as assignee of the mortgage and is enabled to hold the land

as if assignee, notwithstanding the mortgage itself has been cancelled and the debt discharged. The true principle, I apprehend, is that when money due upon a mortgage is paid it shall operate as a discharge of the mortgage or in the nature of an assignment of it, as may best serve the purposes of justice and the just intent of the parties. Many cases state the rule in equity to be that the encumbrance shall be kept on foot or considered extinguished or merged according to the intent or interest *of the parties paying the money.*"

"One who has paid the money due upon a mortgage of lands to which he had a title, that might have been defeated thereby, has the right to hold the lands, as if the mortgage subsisted and had been assigned to him until he has received the amount due upon it from some one who has the right to redeem, whether he took a discharge or assignment of the mortgage." Sheldon on Sub., 14. "The intent of the parties will govern and the mortgage will not be extinguished by the payment if the intention is still to keep it alive." Beach Mod. Eq., 457.

Gray J., in *Haroeck v. Vanderbilt,* 20 N. Y., 395, says "Every judgment purchased and paid for is, so far as the plaintiff is concerned, paid; but if, at the time of payment an assignment is made by the plaintiffs to a third party for the benefit of one with whose money or credit the payment is made, the judgment—although in one sense paid, is not satisfied, but remains subsisting and valid until it has answered the purpose for which it was assigned . . . . . . The fact of payment connected with the assignment to a third party to indemnify another with whose money or credit it is paid, instead of establishing a satisfaction of the judgment, establishes the reverse and proves the judgment to be outstanding."

We are of the opinion that upon the admission by the demurrer that the creditors or a portion of them secured in

the trust deeds to the plaintiffs furnished the money with which to pay off or take up the Gholson note, and placed same in the hands of one of the plaintiffs for that purpose, they are entitled to be substituted to the rights, securities and status of Gholson without regard to the form of the endorsement on the note.   If we were to treat the assignment as made to the plaintiffs as trustees of Davis & Gregory, it being admitted that Davis & Gregory did not furnish the money, the transaction, could not in equity be treated as a payment and discharge of the debt.   Mrs. McCrary has no right to complain of the act of the creditors of Davis & Gregory in taking up the Gholson note.   It enured to her benefit by preventing a sale of the lands at a sacrifice and thereby strengthened her security.   Equity will always disregard forms and look to the substance, protecting the rights of all parties and preserving liens and priorities for that purpose.   The demurrer admits every essential fact upon which the right of the plaintiffs and creditors advancing the money to take up the Gholson note is based and his Honor properly overruled the third ground of the demurrer.

The fourth ground of the demurrer brings into question the right of the plaintiffs to maintain this action until a sale is made by the trustee, R. W. Winston.   It is true that the legal title is outstanding in the trustee.   His Honor properly directed that he be made a party defendant.   We think that, in view of the complications arising out of the execution of the several deeds in trust and the necessity for having the rights of all of the parties interested, adjusted, the course pursued by the plaintiffs in bringing all parties in interest before the court and having a sale of the land made under the direction and control thereof, wise and proper.   The mistake in the name of the trustee, together with the contention of the defendant, Mrs. McCrary, that the trust deed to him and his power to sell had been cancelled and destroyed, would

very seriously affect the price for which the land would have sold.  Courts of equity will always entertain suits brought by trustees for the purpose of having advice in the discharge of their duties and the administration of their trusts.   This is one of the most useful and fruitful sources of their jurisdiction.   His Honor properly overruled the fourth ground of demurrer.   The judgment of his Honor provides for bringing all persons who may possibly have any interest in the property, into court, and unless the defendant, as she may do, desires to file an answer, we can see no good reason why the court below may not proceed to make a decree in accordance with the principles announced in this opinion. The judgment is affirmed

Affirmed.